UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRIGID DES-OGUGUA,                  :   CIVIL NO. **1:06-CV-0721**
                                    :
            Plaintiff               :   (Judge Conner)
                                    :
      v.                            :   (Magistrate Judge Smyser)
                                    :
PENNSYLVANIA DEPARTMENT OF          :
COMMUNITY AND ECONOMIC              :
DEVELOPMENT and EMILY WHITE,        :
                                    :
            Defendants              :

**REPORT AND RECOMMENDATION**

   The complaint in this case was filed on April 6, 2006. The plaintiff is Brigid Des-Ogugua, a black African-American adult of Nigerian ancestry, who alleges that the termination of her employment resulted from unlawful racial discrimination. The defendants are the Pennsylvania Department of Community and Economic Development, a state agency, and Emily White, a supervisor employed by the state agency.

   The complaint alleges that the defendants unlawfully discriminated against the plaintiff in the course of the plaintiff's employment with the defendant state agency and in terminating the plaintiff's employment. The complaint asserts causes of action under 42 U.S.C. §§ 1981, 1983 and

and 2000(e)(5), and asserts causes of action under Pennsylvania state law.  By Order of October 16, 2006 (Doc. 18), the complaint was dismissed in part.

The complaint alleges that the plaintiff was hired as the Director of the Small Business Finance Office within the defendant state agency on or about March 17, 1997.  (Doc. 1, ¶ 16).  In late December 2001 or in early 2002 defendant White, a Caucasian and the plaintiff's supervisor, transferred the plaintiff from the Small Business Finance Center to the Center for Entrepreneurial Assistance.  *Id.*, ¶ 17.  The lending responsibilities of the plaintiff were transferred by defendant White "to Scott Dunkleberger, a Caucasian director with no lending experience."  *Id.*, ¶ 17. The complaint alleges that "when there has been a change in governors, the Director of Pennsylvania Minority Business Development Authority and the Director of the Center for Entrepreneurial Assistance have been terminated."  *Id.*, ¶ 18. The complaint alleges that "[t]raditionally, the head of the Small Business Resource and Assistance Division reported to the Director of the Center for Entrepreneurial Assistance on the ARC program" and that "[w]hen Plaintiff became director of the Center for Entrepreneurial Assistance, Defendant White

2

removed that responsibility from the Plaintiff." *Id.*, ¶ 19. It alleges that although the plaintiff was eligible to be promoted to "the new position of the Center for Business Financing" and had more lending experience than Dunkelberger, Dunkelberger was promoted to the position. *Id.*, ¶¶ 20-21. It alleges that defendant White harassed the plaintiff, ignoring her and dealing directly with her subordinate employees, and that defendant White removed the plaintiff's responsibilities as Secretary's designee as Chair of the Board and did so without cause and without explanation. *Id.*, ¶ 23.

The complaint alleges that a remark disparaging to minorities and to the Minority Business Development Authority was written on a Department bulletin board in March of 2003. The plaintiff forwarded a picture of the remark to defendant White and defendant White took no further action to determine who had written the remark.

The complaint alleges that defendant White "transferred other minorities to Plaintiff's crew because of not wanting to attempt to understand their accent" (*Id.*, ¶ 24) and that defendant White in April 2003 "made a joke during a

3

Directors' meeting that a television commercial which showed an African family traveling in an (*sic*) SUV and speaking in an 'animal' sounding language reminded [White] of the Plaintiff and her children." *Id.*, ¶ 25.

The complaint alleges that on or about May 29, 2003, the plaintiff was notified that her position was being terminated in that the Center for Entrepreneurial Assistance was being eliminated because of a mandatory budget cut. It is alleged that a "Caucasian Director with less experience was not fired." *Id.*, ¶ 26. It is alleged that after the plaintiff had been terminated "her Caucasian subordinate, Maryann van Arsdale, was made Acting Director of the Center and held this position for five months before Isabelle Smith was hired" (*Id.*, ¶ 27) and that the Center for Entrepreneurial Assistance was never eliminated and the plaintiff was never recalled "despite her outstanding record with the Department as evidenced by her outstanding performance reviews." *Id.*, ¶ 28.

It is alleged that while a Caucasian Director was given 180 days notice of termination by defendant White and other Caucasian employees were given thirty to ninety days notice

4

prior to termination, the plaintiff was given only ten (10) days notice prior to termination. *Id.*, ¶ 29.

It is alleged that although the plaintiff had requested to be considered for the position of Director if the office were to remain opened, and was told by agents of the defendant state agency that she could apply if the position were to become available, she was not given any opportunity to apply before being informed in the fall of 2003 that the position had been "filled by Defendant Smith (*sic*)." *Id.*, ¶¶ 30-31.

The complaint alleges that, on February 15, 2006, the EEOC issued a Notice of Right to Sue. *Id.*, ¶ 39.

The complaint asserts violations of the plaintiff's "rights under 42 U.S.C. § 1981 and 42 U.S.C. § 2000(e)(5) (Title VII) and . . . under Pennsylvania law pursuant to the Pennsylvania Human Relations Act and for intentional interference with contractual relations, civil conspiracy, wrongful discharge, emotional distress, and intentional infliction of emotional distress . . ." and seeks to recover fees, costs, attorney fees and other such relief. *Id.*, page

10.

By Order of October 16, 2006 (Doc. 18), the complaint was dismissed with respect to the plaintiff's state tort and § 1981 claims against defendants and with respect to the plaintiff's Title VII claim against defendant Emily White and her PHRA claim against defendant Pennsylvania Department of Community and Economic Development.

An answer to the complaint was filed on November 17, 2006. (Doc. 23). The defendants filed a motion for summary judgment (Doc. 34) on March 16, 2007, with a supporting brief, a LR 56.1 statement of facts and exhibits. (Docs. 35, 36 and 37). A brief in opposition and LR 56.1 statement of facts with exhibits and the plaintiff's unsworn declaration were filed on April 20, 2007. (Docs. 41 and 42). A reply brief was filed on May 7, 2007. (Doc. 43).

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its

6

motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may discharge that burden by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).

An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party."  *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A material factual dispute is a dispute as to a factual issue that will affect the outcome of the trial under governing law.  *Anderson*, *supra*, 477 U.S. at 248.  In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party.  *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

"[T]he plain language of Rule 56(c) mandates the entry

7

of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

The defendants have demonstrated that it is not in dispute that the plaintiff was terminated along with forty-three other persons in a Departmental reorganization. (Doc. 36, ¶ 34; Doc. 41, ¶ 34). The plaintiff's position is that summary judgment in the defendants' favor is nevertheless not justified and that the defendants have cited reorganization as a pretext for racial discrimination.

In a pretext case, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972), applies. "This framework has three steps: (1) the plaintiff bears the burden of establishing a *prima facie* case of discrimination; (2) the burden then shifts to the defendant,

8

who must offer a legitimate non-discriminatory reason for the action; and (3) if the defendant satisfies this burden, the plaintiff must then come forth with evidence indicating that the defendant's proffered reason is merely a pretext." *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 619 (3d Cir. 1996).

There is no rigid formulation of a *prima facie* case under *McDonnell Douglas* and the requirements may vary with different factual situations. *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 938 (3d Cir. 1997). Basically, a *prima facie* case is comprised of the following four elements: (1) the plaintiff belongs to the protected class; (2) the plaintiff was qualified; (3) the plaintiff was rejected or fired; and (4) after the rejection or firing, the employer sought applicants with the plaintiff's qualifications. *Id*. at 939.  As an alternative to the fourth element, a plaintiff can show that the position was filled with a person not belonging to the protected category. *Id.*; *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996).

The defendants argue that the plaintiff can not establish a *prima facie* case of racial discrimination, given that the plaintiff's position was eliminated along with

9

others in a reorganization.  We agree. Even assuming that the position from which the plaintiff was terminated was later reinstated and filled by another employee, the other employee who putatively filled the position belonged to the same protected category. (Doc. 36, ¶ 20; Doc. 41, ¶ 20).

If a plaintiff establishes a *prima facie* case, which here the plaintiff has not, the burden of production shifts to the defendants to articulate  some legitimate nondiscriminatory reason for the adverse employment decision. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).  An employer satisfies its burden of production by introducing evidence which would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision. *Id*. "The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Id*.

The defendants have articulated non-discriminatory reasons for the plaintiff's discharge, the Departmental reorganization.

Once defendants meets its relatively light burden by

10

articulating a legitimate reason for the non-promotion, the burden of production rebounds to the plaintiff and to defeat summary judgment the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).  To avoid summary judgment, "the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Id*. (citations omitted).  "To discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether a discriminatory animus motivated the employer, not whether the employer is 'wise, shrewd, prudent, or competent.'" *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 331 (3d Cir. 1995).  Rather, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered reasons that a reasonable factfinder

could rationally find the proffered reasons unworthy of credence and infer that the employer did not act for those asserted reasons. *Fuentes*, *supra*, 32 F.3d at 765.

The defendants argue that they are entitled to summary judgment because, considering the summary judgment evidence, a reasonable factfinder could not infer discrimination by the defendants against the plaintiff on the basis of race.

Whether addressed in the context of the question whether there is a *prima facie* showing of discrimination in the termination of the plaintiff or in the context of the issue whether the employer has shown a non-discriminatory basis for the plaintiff's termination, the fact that there is here a plain negation of any statistical basis for an assertion of racial discrimination is, in consideration of all of the evidence, dispositive.  Of forty-four persons terminated for downsizing purposes, nineteen were Caucasian males, eighteen were Caucasian females, two were African-American males, two were African-American females, one was an Asian male, one was an Asian female and one was an Hispanic male. (Doc. 36, ¶ 34; Doc. 41, ¶ 34).  A reasonable factfinder could not find here that downsizing in this magnitude and proportions was a pretext for a discriminatory decision.

12

The plaintiff in opposing summary judgment points to "Factual Issues Exist Which Preclude Summary Judgment." (Doc. 40, pp. 5-9). The plaintiff asserts that the defendants' workplace statistics showing a racial balance are wrong. The plaintiff does not present evidence supporting an inference of racial imbalance in the work place. The defendants assert that there is not racial imbalance in the workplace. The dispositive factor is that the plaintiff does not dispute the defendants' Statement of Undisputed Facts, ¶ 34, Doc. 36 statistical statement.

The plaintiff's conclusory contention that there is racial imbalance in the workplace is not adequate at this summary judgment stage to show that there is a genuine dispute as to a material factual issue. The plaintiff does not demonstrate the existence of evidence that there is workplace imbalance.

The plaintiff also points to discrete incidents of alleged workplace racial hostility. We do not consider these incidents to affect the analysis here. None of these is of an unambiguous nature with reference to its possible suggestiveness of a racially hostile motivation or of a racially hostile mindset attributable to a defendant. The plaintiff refers to an anonymous derogatory statement made

13

about the Pennsylvania Minority Business Development Authority that was reported to defendant Emily White, a statement that was made by defendant Emily White to the plaintiff concerning an African family depicted in a television commercial, and the transfer of a man born in India in to the plaintiff's area of supervision.  The plaintiff is able to construe each of these incidents in a manner that could, if accurate, support at least some minimal inference of an adverse view of the plaintiff on the part of a defendant.  Each incident is also amenable to other constructions having no such implication.  In the summary judgment context, all reasonable inferences are to be drawn in the favor of the non-moving party.  The plaintiff asserts that

> the real issue is that the Defendants were readily involved in and/or tolerant of, the denigration of minority-related matters.  This is offensive because it is discriminatory.  The lack of dignity and respect for minority populations is the hallmark of discriminatory behavior, and the three issues cited by Plaintiff as indicators of a discriminatory animus clearly reveal a mindset of denying dignity and lacking respect for Plaintiff and her position.  Accordingly, Plaintiff has demonstrated that there are issues of material fact for resolution by a jury...

(Doc. 40, p. 8).  The plaintiff has not, however, demonstrated, by the supposition that three incidents such as described could assuming her construction of them give rise to a reasonable inference of racial discrimination, that

14

there is a basis for a reasonable inference that the termination of the plaintiff's employment attributed to a reorganization was in fact the result of racial discrimination. The plaintiff has not demonstrated that there is a basis to find it to be an issue reasonably in dispute whether reorganization was a pretext.

These three very diverse incidents amenable to no "pattern" characterization, bearing many constructions, do not separately or together give rise to a reasonable inference of a discriminatory termination.

As stated above, the party seeking summary judgment may do so on the basis that the opposing party has the burden of proof upon a certain element and after the completion of discovery has no evidence to satisfy the burden. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

The initial burden of the plaintiff is to show that she suffered an adverse employment action while others not in her protected class were treated more favorably. The plaintiff does not show the existence of evidence sufficient to carry the burden of proving it to be more likely than not that she was treated less favorably than others not in her protected class, since the plaintiff was dismissed as one of a group of

forty-four persons, some in and some not in the protective class, terminated for downsizing purposes.  The group consisted of nineteen Caucasian males, eighteen Caucasian females, two African-American males, two African-American females, one Asian male, one Asian female, and one Hispanic male. (Doc. 36, ¶ 34; Doc. 41, ¶ 34).  The pre-dismissal incidents described by the plaintiff, including the change of her job assignment and the incidents described by her indicating in her view a racially hostile environment, do not give rise to a genuine dispute as to a material issue of fact.

It is accordingly recommended that the defendants' motion for summary judgment be granted.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:  June 22, 2007.